IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HILARY PALENCAR                    :        CIVIL ACTION NO. **3:CV-09-0325**
                                   :
                                   :        (Judge Nealon)
          Plaintiff               :
                                   :
     v.                            :        (Magistrate Judge Blewitt)
                                   :
COBLER REALTY ADVISORS,            :
et al.,                            :
                                   :
          Defendants              :

## REPORT AND RECOMMENDATION

### I. Background.

_____On February 19, 2009, Plaintiff, Hilary Palencar, filed this action, *pro se*, alleging violations

of Title VIII of the Civil Rights Act of 1968, the Fair Housing Act ("FHA"), as amended, 42 U.S.C.

§ 3601, *et seq.*, for discrimination based on her disability when the lease to an apartment she

rented was terminated.[1] (Doc. 1).  As Plaintiff recognizes, this Court has jurisdiction over her action

under 28 U.S.C. § 1331.[2]

---

[1]As we previously noted, it seems that Plaintiff's apartment at Oak Ridge Estates, an elderly/disabled person apartment complex located in Mountaintop, Pennsylvania, constituted a "dwelling", as Plaintiff recognizes (Doc. 9, p. 1, ¶ 4. and Doc. 27, ¶ 5.), for purposes of the FHA, 42 U.S.C. § 3602(b), especially since a nursing home is a dwelling under the FHA. *See Lakeside Resort Enterprises, LP v. Board of Sup'rs of Palmyra Tp.*, 455 F. 3d 154 (3d Cir. 2006).

[2]In *U.S. v. Gambone Bros. Devel. Co.*, 2008 WL 4410093, *2 (E.D. Pa.), the Court stated:

> The FHA was enacted to provide ... for fair housing throughout the
> United States." 42 U.S.C. § 3601.FN6 To that end, it prohibits
> discrimination in the sale or rental of a dwelling based upon race,
> color, religion, sex, familial status or national origin." 42 U.S.C.
> §§ 3604(a), (b). The FHA also prohibits discrimination against any

The named Defendants in Plaintiff's 3-page typed original Complaint were Cobler Realty Advisors ("CRA") of Shamokin Dam, Pennsylvania, and the Pennsylvania Human Relations Commission ("PHRC"). (*Id.*). Plaintiff also filed a Motion for Leave to Proceed *in forma pauperis*. (Doc. 2).

---

person "because of a handicap" and requires "multifamily dwellings" to be constructed so that they are "readily accessible to and usable by handicapped persons." 42 U.S.C. § 3604(f). The FHA provides relief by way of a civil action for an "aggrieved person," defined to mean "any person who-(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such a person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C.A. § 3602(i).FN7

> FN6.  The FHA, 42 U.S.C. §§ 3601-3619, was originally enacted as Title VIII of the Civil Rights Act of 1968. It originally proscribed housing practices that discriminate on the basis of race, color, national origin or religion. The FHA was amended in 1975 to bar discrimination on the basis of sex. Significant amendments to the  FHA were enacted in 1988 in the FHAA. [Fair Housing Amendments Act].  The FHAA expanded the protected class to include the handicapped and "families with children." The FHAA also created administrative enforcement procedures within the Department of Housing and Urban Development ("HUD") and removed barriers for private litigants. *See* H.R.Rep. No. 100-711, *reprinted in* 1988 U.S.C.C.A.N. 2173, 2184 (1988).

> FN7. The FHA provides a private right of action, 42 U.S.C. § 3613, and also provides for enforcement by the Attorney General in a civil action, 42 U.S.C. § 3614. An "aggrieved person" may commence an action "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A).

Thus, while Plaintiff's action is filed under the 1988 amendments to the FHA, *i.e.*, the FHAA, since she alleges housing discrimination on the basis of her handicap, we simply refer to the statute herein as the FHA.

Further, Plaintiff filed separately, on February 20, 2009, a Motion to File an Amendment to Complaint, under Rule 15(a)(1), due to typographical errors.  On February 24, 2009, Plaintiff filed an incomplete Amended Complaint.  (Doc. 5).  In Doc. 5, Plaintiff added that Cobler Realty Advisors was the owner/operator of Oak Ridge Estates in Mountaintop, Pennsylvania, an "elderly/disabled apartment complex," where she lived  (Doc. 5, p. 1).

On March 5, 2009, Plaintiff filed a two-page, typed Second Amended Complaint, *sans* a caption, which added slightly more detail than her Doc. 5 Amended Complaint. (Doc. 9).  We then screened Plaintiff's Second Amended Complaint.  Since Plaintiff filed a Motion to Proceed *in forma pauperis,* we were obliged to screen Plaintiff's pleading under 28 U.S.C. §1915(e).  As the Court stated in *O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.), "Section 1915(e) (as amended) requires the federal courts to review complaints filed by persons that are proceeding *in forma pauperis* and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on  which relief may be granted, or seeks monetary relief against a Defendant who is immune from such relief.   28 U.S.C. § 1915(e)(2)(B)."   Thus, § 1915(e) obligates the Court to engage in a screening process when a person wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.   Despite the fact that Plaintiff is not an inmate complaining about prison conditions, § 1915(e)(2) applies to all *in forma pauperis* complaints, and not just to prisoners.  *See Grayson v. Mayview State Hosp*., 293 F3d 103, 110, n. 10 (3d Cir. 2002); *Lopez v. Smith*, 203 F. 3d 1122, 1129 (9th Cir. 2000); *Williams v. Marino,* Civil No. 03-0632, M.D. Pa. January 12, 2004, Memorandum and Order, p. 4.

After screening Plaintiff's Second Amended Complaint, we issued an Order on March 10, 2009, and directed, in part, that Plaintiff file a complete Third Amended Complaint and a supplement to her Motion to Proceed *in forma pauperis* within twenty (20) days of the date of said Order.  (Doc. 18).  On March 7, 2009 and March 8, 2009, Plaintiff filed several supplements to her *in forma pauperis* Motion.  (Docs. 11-16).  Also, on March 9, 2009, Plaintiff filed a Motion for Extension of Time to file her Third Amended Complaint, and it was granted.  (Docs. 17 and 18). Plaintiff then filed additional supplements to her *in forma pauperis* Motion. (Docs. 21-23).

On April 7, 2009, Plaintiff filed her Third Amended Complaint, which is typed and consists of 69 paragraphs.  (Doc. 27).  We deem Plaintiff's Third Amended Complaint as superseding her earlier pleadings.  We now screen Plaintiff's latest pleading, *i.e.*, her Third Amended Complaint. (Doc. 27).  To date, Plaintiff's action has not yet been served on Defendants.

On April 16, 209, Plaintiff filed a "Motion for Miscellaneous Relief." (Doc. 28).  Plaintiff indicates that a support Memorandum will be forthcoming.  Plaintiff seems to request that the Court direct the PHRC to produce death notices and competency representations regarding witnesses who provided "affidavits" during  the PHRC's investigation of her complaint against CRA and regarding the witnesses upon which the PHRC Defendants relied.  Specifically, Plaintiff requests the Court to direct the PHRC to inform her "if the people whose signatories appear on the [five identical statements (dated in April and May 2008) of other Oak Ridge Estates tenants attached to Doc. 28] are alive and/or competent."  Plaintiff states that one of the tenants who signed the statement (Carter) was in the hospital at the time her appeal of the PHRC's initial findings was pending.  Plaintiff contends that it would behoove the Court to know if any of the other tenants

4

who signed the statements are also incapacitated or unable to give testimony in her present case.

We find that Plaintiff's recent Doc. 28 Motion has no bearing on our present Report and Recommendation which screens her Third Amended Complaint. We also find no merit to Plaintiff's Doc. 28 Motion, despite the fact Plaintiff has not yet filed a brief, since we fail to see the relevancy of whether the tenants interviewed by CRA representative Langan are currently "alive and/or competent." We consider below Plaintiff's claim against the PHRC Defendants that, during their investigations, they improperly relied upon tenants who did not have apartments near the area where Plaintiff alleges she was harassed by noise, *i.e.* near apartment 18. We will recommend that Plaintiff's Doc. 28 Motion be denied.

## II. Allegations of Third Amended Complaint.

In her Third Amended Complaint, Plaintiff names the following Defendants: Cobler Realty Advisors, owner and operator of Oak Ridge Estates, Mountaintop, Pennsylvania, an elderly/disabled apartment complex; Tiffany Epoca, PHRC Investigator; Christine Rice, PHRC Supervisor of the Housing and Commercial Property Division; Kaaba Brunson, PHRC Regional Director Central Division; and Homer Floyd, PHRC Executive Director. (Doc. 27, p. 1). Plaintiff avers that she is a disabled person with Post Traumatic Stress Disorder ("PTSD") which is "characterized by exaggerated startle response and hyper-vigilance." (*Id.*, p. 2).

Plaintiff avers that when she signed her lease in June 2007 for her apartment at Oak Ridge Estates, she notified a representative of Defendant CRA of her PTSD disability. In July 2007, Plaintiff states that she began to complain to CRA's representatives about her inability to sleep due to loud TV noises at night emanating from the apartment of an adjacent tenant (Mary Lou Bryan).

Plaintiff's insomnia and complaints about Bryan's TV continued through July and mid-August 2007. Plaintiff avers that CRA representative failed to offer a solution to her noise problem, failed to try and mediate with Bryan, failed to assess the situation, failed to contact her doctor, failed to discuss options to resolve the noise problem, and failed to set out a plan to accommodate her disability. (*Id.*, pp. 3-4). Plaintiff states that on August 13, 2007, she was advised that the CRA supervisor was releasing her from her lease, and that she requested CRA to allow her to stay at Oak Ridge Estates.

As a result, Plaintiff avers that she became homeless on August 16, 2007. Plaintiff alleges that the conduct of CRA, through its representatives, violated the FHA and Americans with Disabilities Act ("ADA"). (Doc. 27, p. 6).

On September 24, 2007, Plaintiff states that she filed a complaint of constructive eviction against CRA with the Department of Housing and Urban Development ("HUD") and that her complaint was referred to the PHRC. (*Id.*, p. 6).[3]

Plaintiff states that in October 2007, Defendant Rice of the PHRC called her about her relief

---

[3]As the Court stated in *Mitchell v. Cellone*, 389 F. 3d 86, 88 (3d Cir. 2004), the HUD Secretary refers FHA complaints to the PHRC as required by 42 U.S.C. § 3610(f). The PHRC then initiates an investigation to determine if there is probable cause with respect to a tenant's discrimination claims against the landlord. Under the PHRC, the tenant and landlord can then elect to have the tenant's complaint heard in the Pennsylvania Commonwealth Court or in an administrative hearing which the PHRC litigates for the tenant. *Id.* (citing 43 P.S. § 959(d.1)(Supp. 2004)).

It appears as though Plaintiff Palencar elected to have her complaint heard *via* an administrative hearing which was litigated by the PHRC for her. The *Mitchell* Court noted that "43 P.S. §959 is the Pennsylvania counterpart to FHA's § 3610's administrative enforcement scheme." *Id.* at 92, n. 7. Plaintiff Palencar was then permitted to file a private action in federal court under 42 U.S.C. § 3613 no later than 2 years after the occurrence of the alleged discriminatory housing practice. *Id.* at 92. Since our Plaintiff alleges that her lease was terminated by CRA on August 13, 2007, due to her PTSD disability, it appears as though she timely filed her current action on February 19, 2009.

request in her discrimination complaint against CRA, and that Defendant Epoca advised Plaintiff she was the assigned investigator.  Epoca forwarded Plaintiff CRA's response to her complaint, and Plaintiff responded to it.  Plaintiff became concerned about Epoca's handling of the investigation, and in April 2008, Plaintiff contacted Epoca since no PHRC Findings were issued.  (*Id.*, p. 7).

In May 2008, dissatisfied with Epoca's nine-month investigation, Plaintiff contacted Defendant Brunson, Epoca's supervisor, about her concerns over the investigation.  Defendant Brunson advised Plaintiff that a swift resolution of her complaint would be forthcoming.  Plaintiff avers that on May 22, 2008, she received the Findings issued by Defendant Epoca regarding her disability discrimination complaint against CRA, and it was in favor of CRA.  (*Id.*).  Plaintiff then e-mailed Brunson and Defendant Floyd and requested to appeal the Findings due to alleged oversights in the investigation.  (*Id.*, p. 9).  Also, on May 22, 2008, Defendant Rice, Epoca's supervisor, called Plaintiff after Plaintiff's e-mail, and Plaintiff alleges Rice "became abusive" and would not let her speak, and that he then ended the phone call.

Plaintiff avers that despite her request to Defendant Brunson to prevent Rice from further contact with her, Brunson appointed Rice as the investigator for Plaintiff's appeal.  (*Id.*).  Plaintiff states that in two lengthy phone calls with Rice, Rice stated that she would find in favor of CRA with respect to Plaintiff's appeal since Rice indicated that Plaintiff never identified the nature of her disability to CRA.  Plaintiff avers that she accused Rice of failing to read the details of her initial HUD complaint against CRA, and upon request, Plaintiff e-mailed the initial complaint to Rice.  (*Id.*).  Plaintiff states that she "expressed belief that [she] was being singled out for negligent treatment on the basis of suffering from a psychological disability and directly asked Rice if [her]

7

appeal could be assigned to a supervisor who had experience with [PTSD]."  (*Id.*, p. 9).  Plaintiff

alleges that she complained about Rice to Defendant Floyd and received a response from his

assistant.  Plaintiff avers that Rice then called her again and indicated that she (Plaintiff) did not

show that CRA's representative (Langan) was aware of her disability.  However, Plaintiff states that

in Rice's Findings with respect to Plaintiff's appeal, in which Rice found in favor of CRA, Rice stated

that Langan was aware of the nature of Plaintiff's disability.

Plaintiff further avers as follows:

> Despite Plaintiff's bringing to the awareness of Caaba Branson,
> Christine Rice, and James Holt Plaintiff's extreme apprehension of Tiffany
> Epoca's and Christine Rice's managing of Plaintiff's initial complaint and
> Appeal, the PHRC issued final decision in favor of the Respondent [CRA] and
> denied Plaintiff a Preliminary Hearing.

(*Id.*, p. 9, ¶ 64.).

Plaintiff concludes as follows:

> 68.  In rendering decision in favor of Cobler Realty Advisors, the PHRC,
> through Epoca, Rice, and Caaba Branson:
>
> a)    Egregiously disregarded Plaintiff's civil rights by never having
>         read Plaintiff's original complaint to Mark Haas dated
>         September 24, 2007.
>
> b)    Admitted into evidence alleged, unproven, and questionable
>         interviews of Oak Ridge tenants on the mere basis of tenancy
>         in the same apartment block as Plaintiff and Mary Lou Bryan, but
>         not within the area of either Plaintiff's or of Mary Lou Bryan's
>         units.
>
> c)    Interviewed again same tenants during the Appeal, after Plaintiff
>         reiterated to Rice the unreasonableness, injustice, and illogic of
>         admitting testimony from people who never claimed to witness
>         any interactions between Plaintiff and Mary Lou Bryan while
>         Plaintiff was a tenant at Oak Ridge Estates, and to whom Rita Langan

never referred as witnesses during Plaintiff's tenancy at Oak Ridge Estates.

d)      Made statements with respect to Plaintiff's being "lucky" she was released from her lease.

e)      Did not, during any telephone contacts, respect Plaintiff's wish for her disability to be respected by shortening unduly long conversations or to be provided with Appeals investigator who had familiarity with Post Traumatic Stress Disorder.

f)      Did not, during the initial investigation or Appeal, inform Plaintiff of her right to obtain records pursuant to 42 U.S.C. § 3610(d)(2).

63. (sic) [69.] In taking the actions described in the above complaint, Defendants:

a)      Rented a dwelling on terms disparate to those on which other tenants rented from Cobler Realty Advisors, by denying Plaintiff meaningful access to health and sound sleep in Plaintiff's own dwelling; and condoned this disparate and unequal treatment;

b)      By constructively evicting Plaintiff due to handicap status, made a dwelling unavailable to Plaintiff;

c)      Discriminated in the conditions and privileges of rental of a dwelling; and

d)      Conspired, through return of Plaintiff's security deposit, to pay a disabled tenant to cease her claim of discriminatory treatment at a federally-funded housing complex; and accepted the return of Plaintiff's security deposit as "lucky," without having ever read the original complaint Plaintiff made to HUD on September 24, 2007;

e)      As a result of Defendants' discriminatory conduct, Hilary Palencar has suffered damages.

> f)      The discriminatory actions of Defendants were intentional,
>         willful, and taken in disregard for the civil rights of the
>         Plaintiff as member of a protected class.

(*Id.*, p. 9, ¶'s 68.-69.).[4]

As relief, Plaintiff seeks the Court to declare that the alleged discriminatory practices of CRA are in violation of the FHA, and she seeks monetary damages from CRA.  Plaintiff also seeks declaratory relief from the PHRC.  Further, Plaintiff generally requests punitive damages.  (*Id.*, pp. 11-12).[5]

## III.  Motion to Dismiss Standard.

The Court in *O'Connell v. Sobina*, 2008 WL 144199, *2 (W.D. Pa.), set forth the new standard to dismiss, as annunciated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550  U.S. —, 127 S. Ct. 1955 (2007), as follows:

> As the United States Supreme Court recently held in
> *Bell Atlantic Corp. v. Twombly*, [550] U.S. —, 127 S.Ct.
> 1955, 167 L.Ed.2d 929 (May 21, 2007), a complaint must
> be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) if it does not allege
> "enough facts to state a claim to relief that is plausible on
> its face." *Id.* at 1974 (rejecting the traditional 12(b)(6) standard
> set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99,

---

[4]Plaintiff erroneously numbered her ¶ 69. of Doc. 27 as ¶ 63.

[5]As stated above, Plaintiff has requested monetary damages as against Defendant CRA as well as punitive damages.  Plaintiff does not indicate if she sues PHRC Defendants in their official capacities and/or individual capacities, and she does not specify against which Defendants she seeks punitive damages.  To the extent that she sues PHRC Defendants in their official capacities, it is well settled that any request for money damages as against these Defendants is barred by the Eleventh Amendment.  The Eleventh Amendment does not bar a suit against a state official in her personal capacity.  *See Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir.) (Non-Precedential).  Thus, Plaintiff's request for punitive damages, insofar as it is against PHRC Defendants in their official capacities, is subject to dismissal.

2 L.Ed.2d 80 (1957)).  The court must accept as true all
all allegations of the Complaint and all reasonable factual
inferences must be viewed in the light most favorable to plaintiff.
*Angelastro v. Prudential-Bache Securities, Inc.*, 764 F.2d 939, 944
(3d Cir. 1985).  The Court, however, need not accept inferences
drawn by plaintiff if they are unsupported by the facts as set
forth in the complaint.  *See California Pub. Employee Ret. Sys. v.
The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing
*Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906
(3d Cir. 1997)).  Nor must the court accept legal conclusions
set forth as factual allegations.  *Bell Atlantic Corp.*, 127 S.Ct.
at 1965 (citing *Papas an v. Allain*, 478 U.S. 265, 286, 106 S.Ct.
2932, 92 L.Ed.2d 209 (1986)).  "Factual allegations must be
enough to raise a right to relief above the speculative level."
*Bell Atlantic Corp.*, 127 S.Ct. at 1965.  Although the United
States Supreme Court does "not require heightened fact pleading
of specifics, [the Court does require] enough facts to state a claim
to relief that is plausible on its face."  *Id* at 1974.

*See also Kokinda v. Breiner*, 557 F. Supp. 2d 581, 588 (M.D. Pa. 2008).

Pursuant to 28 U.S.C. § 1915(e)(2), in proceedings *in forma pauperis*, a court shall dismiss

a claim if it determines that the claim "(i) is frivolous or malicious; (ii) fails to state a claim on which

relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such

relief."  *See O'Connell, supra*.  *Pro se* litigants, such as Plaintiff, are accorded substantial deference

in federal court.  *See Haines v. Kerner*, 404 U.S. 519 (1972); *Hughes v. Rowe*, 449 U.S. 5 (1980).

They are not, however, free to ignore the Federal Rules of Civil Procedure.

Federal Rules of Civil Procedure 8(a)(2) requires that, in order to state a claim, a pleading

must contain "a short and plain statement of the claim showing that the pleader is entitled to relief,"

which "give[s] the defendant fair notice of what the . . .  claim is and the grounds upon which it

rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1959 (2007) (citing *Conley v.

Gibson*, 355 U.S. 41, 47 (1957)).  Thus, "[a] party must state its claims . . .  in numbered paragraphs,

11

each limited to a single set of circumstances" and, "if doing so would promote clarity, each claim founded on a separate transaction or occurrence . . .  must be stated in a separate count . . . " Fed.R.Civ.P. 10(b).

## IV.  Discussion.

As mentioned, in addition to CRA, Plaintiff names as Defendants four employees of the PHRC, namely, Epoca, Rice, Branson, and Floyd (hereinafter "PHRC Defendants").  Plaintiff named the PHRC employees as party Defendants based on their alleged conduct during the investigation of her discrimination complaint against CRA, and based on their rendering an unfavorable decision regarding her complaint in which she alleged CRA unconstitutionally terminated her lease due to her disability.  Plaintiff also names the PHRC Defendants with respect to their handling of her appeal of the PHRC's initial finding in favor of CRA and with respect to their appeal decision.

Plaintiff states that she filed a complaint about CRA with HUD, and it was referred to the PHRC.  Specifically, Plaintiff states that in the complaint forwarded to the PHRC, she alleged that CRA released her from the lease to her apartment at Oak Ridge Estates after she complained to the management about her insomnia caused by the noisy television of a tenant in an apartment adjacent to her apartment (Mary Lou Bryan), instead of giving her an accommodation for her disability, PTSD.  Plaintiff states that as a result of the decision of CRA to end her lease instead of accommodating her disability, she was rendered homeless on August 16, 2007, and that the discriminatory conduct of Defendant CRA caused her damages.  Plaintiff seeks, in part, a declaratory judgment, as well as compensatory and punitive damages against Defendants.  (Doc.

27, p.11-12).[6]

Plaintiff does not adequately state how each individual PHRC Defendant discriminated against her with respect to her rental of the Oak Ridge Estates apartment based on her PTSD disability.  Thus, there are not sufficient allegations against the PHRC Defendants to state a claim against them under Title VIII, the FHA.  As detailed above, Plaintiff's FHA claim in her Third Amended Complaint against PHRC Defendants is based solely on their investigations, findings and decisions  to deny her disability discrimination complaint against Defendant CRA, and it is based on the manner in which they made their decision regarding Plaintiff's appeal.  We do find that Plaintiff has sufficiently stated claims under the FHA as against Defendant CRA with respect to her intentional disability discrimination claim and her failure to accommodate claim.

In *Lakeside Resort Enterprises, LP v. Board of Sup'rs of Palmyra Tp.*, 455 F. 3d 154, 156  (3d Cir. 2006), the Court stated:

> The Fair Housing Act proscribes discrimination in the sale of a dwelling due to a handicap of those who are to reside in the dwelling after the sale. 42 U.S.C. § 3604(f)(1). [FN6] A dwelling is defined as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof." *Id.* § 3602(b).

---

[6]The Court in *Comm. Services, Inc. v. Heidelberg Tp.*, 439 F. Supp. 2d 380, 396 (M.D. Pa. 2006), stated:

> The FHA also provides broad relief for its violation, including actual and punitive damages, and any "relief [that] the court deems appropriate, [including] permanent or temporary injunction[s], temporary restraining order[s] ... [or] order[s] enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate." 42 U.S.C. § 3613(c)(1).

13

> FN6.  This provision makes it unlawful [t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of --
>
> > (A) that buyer or renter;
> > (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
> > (C) any person associated with that buyer or renter.

42 U.S.C. § 3604(f)(1). (Footnote 5 omitted).

*See Turner v. Crawford Square Apt. III, L.P.*, 449 F. 3d 542, 545, n. 6 (3d Cir. 2006) ("The FHA, among other things, makes it unlawful to discriminate in the sale, rental, or financing of dwellings because of race, color, religion, sex familial status, national origin, or handicap. *See* 42 U.S.C. § 3604.").

A disability discrimination claim under the FHA requires more information than Plaintiff alleges with respect to the PHRC Defendants, including a showing that a discriminatory purpose was a motivating factor behind the challenged action, *i.e.* terminating Plaintiff's lease to her apartment due to her PTSD disability.  Also, a failure to accommodate claim under the FHA requires Plaintiff to show that the accommodations requested were necessary to give her an equal opportunity to use and enjoy her apartment, and to show a connection between the accommodation she requested and its necessity for affording her an equal opportunity to use and enjoy her apartment.  *See Spieth v. Bucks County Housing Auth*., 2009 WL 197559 (E. D. Pa.). Additionally, conclusory allegations of discrimination are not sufficient to put Defendants on notice of the claims against them.  *See Hidalgo v. Pa. Dept. of Public Welfare*, Civil No. 08-1847, M.D. Pa. (10-8-08 Order).

14

Specifically, the *Spieth* Court stated:

> The Fair Housing Amendments Act ("FHAA") bars discrimination against
> disabled people in the sale or rental of housing and requires reasonable
> accommodations in "rules, policies, practices, or services" as necessary
> to allow a handicapped person to use and enjoy a dwelling.  42 U.S.C.A.
> § 3604(f).  There are three types of claims that a plaintiff with a
> disability may bring under the FHAA: 1) intentional discrimination, or
> disparate treatment, claims; 2) disparate impact claims; and 3) claims
> that a defendant refused to make "reasonable accommodations in rules,
> policies, practices, or services, when such accommodations may be
> necessary to afford such person equal opportunity to use and enjoy a
> dwelling." *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170,
> 176 (3d Cir. 2005) (citing 42 U.S.C. § 3604(f)(3)(B)).
>
> The text of the FHAA precludes discrimination in the sale or rental
> of a dwelling or in providing services or facilities in connection with
> that dwelling.  42 U.S.C.A. § 3604.  Typically, this act is used to
> bring suits against landlords, but courts have also held that this act applies
> to suits against municipalities and land use authorities.  *Wind Gap*, 421
> F.3d at 176.

2009 WL 197559, *6; *Comm. Services, Inc. v. Heidelberg Tp.*, 439 F. Supp. 2d 380 (M.D. Pa.

2006); *Brillhart v. Sharp*, 2008 WL 2857713 (M.D. Pa.).

We find that Plaintiff Palencar has attempted to raise, against all Defendants, both an

intentional discrimination (disparate treatment) claim under the FHA, as well as a failure to make

a reasonable accommodation claim under the FHA.

Further, "[i]n order to state a claim for disparate treatment under the [FHA], a Plaintiff must

demonstrate that a 'discriminatory purpose was a motivating factor behind the challenged action.'"

2009 WL 197559, *7 (citation omitted); *Comm. Services, Inc. v. Heidelberg Tp.,* 439 F. Supp. 2d

at 396. (citations omitted).  Also, "the Plaintiff must merely demonstrate that the protected

characteristic 'played a role in the Defendant's decision to treat [the Plaintiff] differently.'" *Comm.*

*Services, Inc. v. Heidelberg Tp.,* 439 F. Supp. 2d at 396.

"In order to state a claim for failure to make a reasonable accommodation, a Plaintiff must show that 'the accommodations that it requested are necessary to afford handicapped persons an equal opportunity to use and enjoy a dwelling.'" 2009 WL 197559, *7 (citation omitted); *Comm. Services, Inc. v. Heidelberg Tp.,* 439 F. Supp. 2d at 398.

While we find that Plaintiff has once again (in her Third Amended Complaint) failed to state intentional disability discrimination (disparate treatment) and failure to accommodate claims under the FHA as against the PHRC Defendants, we find that she has stated such claims as against Defendant CRA.  Plaintiff does not allege that she was injured by any discriminatory housing practice of the PHRC Defendants or that the PHRC Defendants committed a discriminatory housing act based on her disability.  "[R]ecovery under § 3604(f)(2) is predicated upon showing discrimination in the 'terms, conditions, or privileges of sale or rental of a dwelling . . . because of a a handicap . . . .'" *Gambone Bros.*, 2008 WL 4410093, * 7.  Plaintiff does not allege that the PHRC Defendants, as the individuals assigned to investigate Plaintiff's housing discrimination complaint against CRA, discriminated against her because of her disability (PTSD) in relation to the sale or rental of a dwelling.  Plaintiff does, however, make sufficient allegations against Defendant CRA to state claims under the FHA against it.  Plaintiff is an "aggrieved person" entitled to sue Defendant CRA under the FHA since she alleges that she is a handicapped person damaged by Defendant CRA's unfair housing practice.  Thus, while Plaintiff has a private right of action against

Defendant CRA under the FHA, 42 U.S.C. § 3613, we do not find that she has stated a cause of action against the PHRC Defendants under the FHA based on their investigation and findings with respect to her housing discrimination complaint against CRA.

With respect to Defendant CRA, Plaintiff sufficiently specifies in her latest pleading the accommodations she requested CRA provide to her so that her neighboring tenant's television would not disturb her sleep, and she alleges that her complaints about the late night noise were related to her disability. Plaintiff also now sufficiently states why an accommodation was necessary by Defendant CRA, based on her disability, for her to use and enjoy her apartment. Plaintiff further sufficiently states, for present purposes, that a discriminatory purpose was the motivating factor behind the decision of CRA to terminate her lease due to her complaints about noise from Bryan's apartment and her complaints that the noise was aggravating her PTSD condition.

As the *Spieth* Court stated:

> "[T]he plaintiff in an FHAA reasonable accommodations case must establish a nexus between the accommodations that he or she is requesting, and their necessity for providing handicapped individuals an "equal opportunity" to use and enjoy housing." *Lapid-Laurel*, 284 F.3d at 459; *see also Smith & Lee Assoc., Inc. v. City of Taylor, Mich.*, 102 F.3d 781, 795 (6th Cir. 1996) (holding that plaintiffs need to show that "but-for" the reasonable accommodation, they will likely be denied an equal opportunity to enjoy a particular dwelling; *Bronk v. Ineichen*, 54 F.3d 425, 429 (7t Cir. 1995) ("[T]he concept of necessity requires at a minimum the showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability."); *U.S. v. Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997) ("[without a causal link between defendants' policy and the plaintiff's injury, there can be no obligation on the part of the defendants to make a reasonable accommodation.").

2009 WL 197559 , *7.

Stated simply, Plaintiff has not stated a disparate treatment claim under the FHA as against the PHRC Defendants since she has not sufficiently alleged any discrimination by these four individual Defendants based on her PTSD.  Rather, she states that Defendant CRA terminated her lease due to her PTSD, and due to her complaints about her neighbor's television and late night noise which was preventing her sleep and aggravating her PTSD condition.  Plaintiff does not properly allege that she was denied rental of her apartment due to her PTSD disability by the PHRC Defendants.  Plaintiff only properly alleges that Defendant CRA had a discriminatory intent with respect to its conduct.  Further, Plaintiff only sufficiently connects her PTSD disability as the cause of the alleged discriminatory conduct by Defendant CRA, and not as the cause of the alleged conduct by the PHRC Defendants.  Thus, Plaintiff has not met her burden of stating a *prima facie* case of purposeful discrimination against the PHRC Defendants.  *See Poindexter v. Allegheny Co. Housing Auth.*, 2007 WL 3120289, * 13 (W.D. Pa.).

As mentioned, Plaintiff names the four employees of PHRC as Defendants based on the PHRC's investigations and findings, which she alleges were performed in a negligent manner with respect to their reviewing the evidence and reviewing her initial complaint.  Plaintiff alleges that the PHRC Defendants admitted improper evidence, namely, interviews of other Oak Ridge tenants, that they improperly denied her discrimination complaint, and that they improperly denied her appeal.  However, as discussed, Plaintiff does not allege that the PHRC Defendants discriminated against her because of her PTSD disability with respect to the rental of her Oak Ridge Estates

18

apartment.[7]

Moreover, Plaintiff's allegations against the PHRC Defendants largely amount to negligence claims, *i.e.*, they negligently performed their administrative enforcement responsibilities under the FHA (*i.e.*, Pennsylvania's counterpart, 43 P.S. § 959) with respect to their investigation and findings regarding Plaintiff's housing discrimination complaint against Defendant CRA.   To the extent that Plaintiff is deemed as raising claims against the PHRC Defendants under 42 U.S.C. § 1983[8] for their alleged negligent handling of the investigation and their alleged negligent findings, negligence is not a basis for a § 1983 civil rights action against state actors. *See Davidson v O'Lone*, 752 F.2d 817 (3d Cir. 1984); *Daniels v. Williams*, 474 U.S. 327 (1986).

---

[7]Plaintiff did not rename the PHRC as a Defendant in her Third Amended Complaint. As we stated in our March 6, 2009 Order (Doc. 10), the PHRC is entitled to immunity under the Eleventh Amendment.  *See Bullock v. PHRC*, 2005 WL 2250826, *2 (E.D. Pa.).  The *Bullock* Court concluded that "the Commonwealth [of PA] has specifically retained its Eleventh Amendment immunity for suits filed in federal court."  *Id*. at *3(citing *Dennison v. PA DOC*, 268 F. Supp. 2d 387, 405 (M.D. Pa. 2003); *Des-Ogugua v. PA Dept. of Community and Economic Devel.*, 2006 WL 2950481 (M.D. Pa.).  Moreover, as noted above, Plaintiff cannot sue the four Defendant employees of the PHRC for monetary damages in their official capacities.  *See Des-Ogugua, supra: Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984).  Plaintiff may be able to sue the four individual state officials of the PHRC for protective relief based on *Ex Parte Young*, 209 U.S. 123 (1908), and its exception to Eleventh Amendment immunity with respect to a claim for injunctive relief if she alleges ongoing discrimination by the PHRC or its personnel based on her disability.

[8]In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements:  (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).

Additionally, we do not find that Plaintiff has stated any claim under the Americans with Disability Act ("ADA") against any Defendant.  The ADA provides that:

> no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

A covered entity is defined as "an employer, employment agency, labor organization, or joint labor-management committee."  42 U.S.C. § 12111(2).  An employer is defined as a "person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks or in the current or preceding calendar year, and any agent of such person . . ."   42 U.S.C. § 12111(5).

The Court in *Bjorklund v. Phila. Housing Auth.*, 118 Fed. Appx. 624, 625-626 (3d Cir. 2004), stated that Plaintiff must prove the following elements in an ADA action:

> (1) he [plaintiff] was a qualified individual with a disability or who was regarded as having a disability; [FN1] and (2) that he suffered an adverse employment action as a result of his disability or perceived disability.  *Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 511-12 (3d Cir. 2001); *see also Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 381 (3d Cir. 2002).

> The ADA defines a "qualified individual with a disability" as

> an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that individual holds or desires.

42 U.S.C. § 12111(8).

Since Plaintiff Palencar does not allege at the time she was a "qualified individual with a disability" that any adverse employment actions were taken against her by any Defendant, she does not state a discrimination claim under the ADA. *Bjorklund, supra.*

It is not clear if Plaintiff Palencar is attempting to assert a Fourteenth Amendment equal protection claim against the PHRC Defendants under §1983.[9]  In any event, we find that Plaintiff has not stated a cognizable Fourteenth Amendment equal protection claim against the PHRC Defendants.  (*See* Doc. 27, p. 11, ¶ 63. (sic) [69.]).

As stated above, Plaintiff alleges that Defendants engaged in disparate and unequal treatment against her by renting "a dwelling on terms disparate to those on which other tenants rented from [CRA], by denying [her] meaningful access to health and sound sleep in [her] own dwelling," and that they "condoned this disparate and unequal treatment." (*Id*.).  Plaintiff also avers that "by constructively evicting [her] due to handicap status, [Defendants] made a dwelling unavailable to [her]." (*Id*.).  Plaintiff also avers that by having her security deposit money returned to her by CRA, Defendants were essentially paying her to "cease her claim of discriminatory treatment" against CRA, and that they considered the return of this money as "lucky" "without having ever read the original complaint [she] made to HUD on September 24, 2007."  (*Id*.). Plaintiff concludes that "the discriminatory actions of Defendants were intentional, willful, and

---

[9]As noted above, Plaintiff can only assert a constitutional claim under § 1983 against state actors.  Thus, Defendant CRA, a private realty company, is not a state actor amenable to suit under § 1983.  Therefore, to the extent that Plaintiff is deemed as raising a Fourteenth Amendment equal protection claim against Defendant CRA, we recommend that it be dismissed.

taken in disregard for the civil rights of [her] as a member of a protected class."  (*Id*.).

Plaintiff has failed to sufficiently allege that she was treated differently by the PHRC Defendants because of her PTSD disability.   Rather, Plaintiff avers that the PHRC improperly conducted their investigations regarding her housing disability complaint against Defendant CRA, that they failed to read her original complaint to HUD, that they interviewed the wrong tenants during their investigations, that they admitted improper evidence during the administrative process, that they failed to shorten lengthy phone conversations with her, and that they failed to assign an investigator who was familiar with PTSD.   Plaintiff also avers that the PHRC Defendants failed to advise her of her right to obtain records.  (*Id*., pp. 10-11).

In the case of *Jefferson v. Wolfe*, 2006 WL 1947721, * 15 (W.D. Pa.), the Court stated:

> "as a threshold matter, in order to establish an equal protection
> violation, the plaintiff must ' . . . demonstrate that [he has] been
> treated differently by a state actor than others who are similarly
> situated simply because [he] belongs to a particular protected
> class.'" *(Citing Keevan v. Smith*, 100 F.3d 644, 648 (8th Cir. 1996).

The elements of a § 1983 equal protection claim require Plaintiff to state the PHRC Defendants intended to discriminate against her, and later to prove this by either direct or circumstantial evidence.  *See Pa. v. Flaherty*, 983 F. 2d 1267 (3d Cir. 1993) (Intent is a *prima facie* element of a § 1983 equal protection claim of discrimination) (citing *Washington v. Davis*, 426 U.S. 229 (1976).  *See also Williams v. Pa. State Police*, 108 F. Supp. 2d 460, 471 (E.D. Pa. 2000) ("to prevail on a § 1983 claim, a plaintiff must prove that the Defendant intended to discriminate") (citation omitted).  Based on Plaintiff's allegations in her fourth amended pleading, Plaintiff does not state that the PHRC Defendants discriminated against her with respect to the rental of her

22

dwelling based on her PTSD condition.  Nor does she sufficiently allege that the PHRC Defendants discriminated against her based on her disability during the investigations of her complaint and her appeal, and when they made their findings.

The Equal Protection Clause does not require that all persons be treated alike, but instead, a plaintiff must show that the differential treatment to those similarly situated was unreasonable, or involved a fundamental interest or individual discrimination.  *Tigner v. Texas*, 310 U.S. 141, 147 (1940); *Price v. Cohen*, 715 F.2d 87, 91 (3d Cir. 1983), *cert. denied*, 465 U.S. 1032 (1984).  It is well-settled that a litigant, in order to establish a viable equal protection claim, must show an intentional or purposeful discrimination.  *Snowden v. Hughes*, 321 U.S. 1, 8 (1944); *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986); *E & T Realty v. Strickland*, 830 F.2d 1107, 1113-14 (11th Cir. 1987), *cert. denied* 485 U.S. 961 (1988).  This "state of mind" requirement applies equally to claims involving (1) discrimination on the basis of race, religion, gender, alienage or national origin, (2) the violation of fundamental rights, and (3) classifications based on social or economic factors.  *See, e.g., Britton v. City of Erie*, 933 F. Supp. 1261, 1266 (W.D. Pa. 1995), *aff'd*, 100 F.3d 946 (3d Cir. 1996); *Adams v. McAllister*, 798 F. Supp. 242, 245 (M.D. Pa.), *aff'd*. 972 F.2d 1330 (3d Cir. 1992).

As the Court in *Barnes Foundation v. Township of Lower Merion*, 942 F. Supp. 970, 983 (E.D. Pa. 1997), stated:

> The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.  The Equal Protection Clause announces the "fundamental principle" that "the State must govern impartially," *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 587, 99 S.Ct. 1355, 1367, 59 L.Ed.2d 587 (1979), and "is

essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

Plaintiff has not alleged facts from which it can be concluded that she was a member of a protected class based on her PTSD. *See L. v. Boyertown Area School Dist.*, 2009 WL 466386,*6 (Plaintiff, who was a student with a disability, was not a member of a protected class). Thus, as the Court stated in *L. v. Boyertown Area School Dist.*, 2009 WL 466386,*6 (E.D. Pa.):

> Plaintiffs do not allege discrimination based on membership in a protected class. Thus, in order to prevail on an equal protection claim, Plaintiffs must show that Defendants treated B.L. differently than other similarly situated individuals, that Defendants did so intentionally, and that there was no rational basis for the difference in treatment. *Hill v. Borough of Kutztown,* 455 F.3d 225, 239 (3d Cir.2006). The Supreme Court has held that this standard applies to "class of one" equal protection claims. *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).

> The Third Circuit agrees that "the Supreme Court's holding in *Olech* does not establish a requirement that a plaintiff identify in a complaint actual instances where others have been treated differently for purposes of equal protection." *Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir.2008) (citing *DeMuria v. Hawkes,* 328 F.3d 704, 707 (2d Cir.2003). However, this relaxed standard does not enable Plaintiffs to circumvent the basic requirements that "a formulaic recitation of a cause of action's elements" is not sufficient to survive a motion to dismiss and that "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted).

We find that our Plaintiff does not allege that she was treated differently by the PHRC Defendants than similarly situated housing discrimination complainants on the basis of her disability (PTSD). Nor does Plaintiff allege that the PHRC Defendants treated her differently during their investigations and findings than similarly situated complainants on the basis of her disability. Rather,

as discussed above, Plaintiff's claims against the PHRC Defendants sound in negligence with respect to the manner in which they conducted their investigations of her complaint against CRA.  Plaintiff essentially admits that there was a rationale basis for her treatment by the PHRC Defendants in that she states  they found she failed to identify the nature of her disability to CRA.  (*See* Doc. 27, p. 8). Despite Plaintiff's contention that this finding was completely unsubstantiated and wrong, and that the PHRC Defendants failed to read her initial complaint to HUD, Plaintiff nonetheless acknowledges that there was a basis, other than disability discrimination, for the findings of the PHRC Defendants.

Thus, we find that the allegations of our Plaintiff as against the PHRC Defendants are not sufficient to state a § 1983 equal protection claim since she has failed to properly state that the PHRC Defendants treated her differently than other similarly situated individuals.  *See L. v. Boyertown Area School Dist.*, *supra* at *6.[10]

---

[10]Our analysis with respect to any Fourteenth Amendment equal protection claim Plaintiff may be asserting against the PHRC Defendants is equally applicable to Plaintiff's intentional discrimination (disparate treatment) claim against the  PHRC Defendants under the FHA.  *See Sharpvisions, Inc. v. Borough of Plum*, 475 F. Supp. 2d 514, 521, n. 2 (W. D. Pa. 2007) (since the Fourteenth Amendment Equal Protection Clause also provides a basis "for challenging disability-based housing discrimination, the legal analysis under the FHA is therefore equally applicable to Plaintiff's [ADA, Rehabilitation Act and Fourteenth Amendment] claims.") (citation omitted).

Finally, we find that the numerous supplements to Plaintiff's *in forma pauperis* Motion are sufficient to show she is not able to pay the filing fee for her case and we will recommend that it be granted.

## IV. Recommendation.

Based on the foregoing, it is respectfully recommended that Plaintiff be allowed to proceed only as against Defendant CRA with respect to her FHA intentional discrimination claim and failure to accommodate claim stated in her Third Amended Complaint.  It is recommended that Plaintiff's ADA claim be dismissed against all Defendants, and that any Fourteenth Amendment equal protection claim be dismissed against all Defendants.   It is also recommended that the four PHRC Defendants, Epoca, Rice, Brunson and Floyd, be dismissed with prejudice.    Additionally, it is recommended that Plaintiff's  "Motion for Miscellaneous Relief"(Doc. 28) be denied.

Further, it is recommended that Plaintiff's *in forma pauperis* Motion (Doc. 2) be granted, and that the Clerk of Court be directed to issue the Summons and the United States Marshals Service be directed to serve Plaintiff's Third Amended Complaint on Defendant CRA.  Additionally, it is recommended that this case be recommitted to the undersigned for further proceedings.[11]

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: April 17, 2009**

---

[11]Notwithstanding the Plaintiff's *pro se* status and our finding that all of her claims are insufficient as to the PHRC Defendants, we do not recommend that she be permitted to amend her Complaint a fourth time to include more specific facts against the PHRC Defendants. Plaintiff has already filed several pleadings, *i.e.* an original Complaint as well as three amended pleadings, and we do not recommend that she be granted leave to file a fourth amended complaint to try and state FHA claims against the PHRC Defendants, since we find futility of any further amendments pursuant to our discussion herein.  Thus, since we find futility of any amendment of Plaintiff's claims as to the PHRC Defendants, we shall not recommend Plaintiff be granted leave to again amend her pleading.  *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted); *Alston v. Parker*, 363 F. 3d 229, 235 (3d Cir. 2004).

As stated above, we recommend that the four PHRC Defendants be dismissed with prejudice.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HILARY PALENCAR     :  CIVIL ACTION NO. **3:CV-09-0325**
           :
           :  (Judge Nealon)
    Plaintiff   :
           :
   v.       :  (Magistrate Judge Blewitt)
           :
COBLER REALTY ADVISORS,  :
et al.,         :
           :
    Defendants  :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **April 17, 2009.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

28

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                       **s/ Thomas M. Blewitt**
_____  **THOMAS M. BLEWITT**
                      **United States Magistrate Judge**

**Dated: April 17, 2009**